CORNELL ET AL. *v.* OHIO STATE UNIVERSITY HOSPITALS.

(No. 84-08962—Decided July 16, 1987.)

Court of Claims of Ohio.

*Spero & Rosenfield Co., L.P.A., Keith E. Spero* and *Ronald L. Rosenfield,* for plaintiffs.

*Emens, Hurd, Kegler & Ritter, William J. Brown, Crabbe, Brown, Jones, Potts & Schmidt* and *Steven B. Ayers,* for defendant.

STERN, J. On August 9, 1983, the plaintiff Ernest Cornell ("Cornell") underwent an endarterectomy while a patient at Ohio State University Hospitals, defendant herein. The surgeon was Dr. Gerard Kakos. Surgery was to improve blood flow through Cornell's right carotid artery, which is located in his neck. Originally, the surgery was recommended by Dr. John Vasko, who asked Dr. Kakos to perform the surgery. It is undisputed that as a result of this surgery, Cornell suffered some damage to nerves in his neck, which manifested itself by deviation of the tongue, vocal cord paralysis

of the right side, difficulty in eating, swallowing, breathing, and persistent hoarseness. The nerves most likely damaged during this operation were the hypoglossal nerve (cranial nerve 12), and/or the recurrent laryngeal nerve. It is well-documented that Cornell's post-operative difficulties were brought to the attention of the medical personnel attending Cornell. On August 14, 1983, Dr. Kakos discharged Cornell from the Ohio State University Hospitals. At the time of discharge, a second endarterectomy was planned for Cornell's left carotid artery.

Cornell continued to experience great difficulty in eating, swallowing, talking, and breathing. As a follow-up to cancer surgery Cornell underwent in April 1983, he visited Dr. Thomas Rojewski on August 30, 1983. Dr. Rojewski is the otolaryngologist who removed a carcinoma from Cornell's left jaw and neck area in April 1983. Dr. Rojewski examined Cornell during this August 30, 1983 office visit and found that the right side of his tongue and his right vocal cord were paralyzed. Dr. Rojewski advised Cornell not to proceed with the endarterectomy of the left carotid unless the situation was "life or death." Dr. Rojewski further advised Cornell to inform Dr. Vasko of Dr. Rojewski's finding when Cornell next spoke with Dr. Vasko. Dr. Rojewski suspected that the injury to the nerves may have been incurred during surgery, though at the time he did not inform Cornell of this suspicion since temporary paralyzation of nerves is not uncommon following surgery.

Cornell and his wife visited Dr. Vasko in his office on September 2, 1983. Cornell advised Dr. Vasko that Dr. Rojewski found the paralyzed vocal cord and urged postponement of the left endarterectomy. Dr. Vasko told the Cornells that the cord was not paralyzed and the endarterectomy of the left carotid would proceed on September 19, 1983, in the Ohio State University Hospitals. Dr. Vasko did not examine Cornell on September 2, 1983 during the office visit.

During Cornell's admission to the Ohio State University Hospitals on September 18, 1983, he was interviewed and examined by a first-year resident doctor, Daniel Teitelbaum. Dr. Teitelbaum was at that time an employee of the defendant hospital. During the course of the examination, Cornell advised Dr. Teitelbaum of Dr. Rojewski's diagnosis of the problems Cornell was experiencing with the throat and tongue. Dr. Teitelbaum was also advised by Cornell that the surgeon for the next day's endarterectomy, Dr. Vasko, had also been informed of Dr. Rojewski's diagnosis. This information was noted by Dr. Teitelbaum on the hospital chart, along with other information provided by Cornell and observations by Dr. Teitelbaum during this cursory examination.

Dr. Vasko conducted the left carotid endarterectomy as scheduled on September 19, 1983. Cornell was a patient in the Ohio State University Hospitals following this surgery until his discharge on October 4, 1983. After the second endarterectomy, Cornell continued to have extreme difficulty in swallowing, eating, and breathing. Prior to discharge, Cornell was examined by Dr. William Saunders, an otolaryngologist, at the request of Dr. Swango, an Ohio State University resident doctor in thoracic surgery. Dr. Saunders examined Cornell on September 21, 1983, and found that Cornell was the victim of a paralyzed right hypoglossal nerve as well as bilateral vocal cord paralyzation. Subsequent to the operation, Dr. Vasko suffered a stroke and was rendered unable to communicate; thus, his deposition or live testimony is not available to this court.

After Cornell's October 4, 1983

discharge, he was transferred to his hometown hospital and the care of his local physician, Dr. Emmons. On October 13, 1983, he visited Dr. Rojewski for follow up to the April 1983 cancer surgery performed by Dr. Rojewski. Dr. Rojewski found that the paralyzed hypoglossal nerve, initially discovered by him in August 1983, persisted and that Cornell now exhibited bilateral vocal cord paralyzation. Dr. Rojewski had earlier consulted with Dr. Emmons regarding placing a feeding gastrostomy directly into Cornell's stomach since he could not eat by mouth without aspirating the food into his lungs due to his vocal cord paralyzation. Dr. Rojewski informed the Cornells on October 13, 1983, that a gastrostomy would be beneficial and that he was also concerned that Cornell's vocal cords could drift closer together, thus further restricting his airway and necessitating a tracheostomy. Shortly thereafter, a feeding gastrostomy tube was implanted in Cornell's stomach.

A follow-up visit with Dr. Rojewski in November 1983 revealed the vocal cords had drifted closer to one another and were greatly restricting Cornell's air passage. Dr. Rojewski scheduled a tracheostomy on November 16, 1983, which was performed on an urgent basis. Cornell was later hospitalized in August 1984 for pneumonia, in October 1984 for vocal cord teflon injection, and in January 1985 for more teflon injection. The gastrostomy and tracheostomy were removed in October 1984, after the left vocal cord regained some mobility and was injected with teflon to enhance Cornell's voice.

Cornell and his wife filed suit against Drs. Vasko, Kakos, and Dehring in the Franklin County Court of Common Pleas. The latter doctor was the anesthesiologist during Cornell's second endarterectomy. This suit was settled prior to trial and the plaintiffs received $220,000 from the three defendant doctors.

On December 7, 1984, the plaintiffs filed suit against the Ohio State University Hospitals subsequent to written notice to the defendant as allowed by R.C. 2305.11. Plaintiffs allege that the negligence of Ohio State University Hospitals employees in the course of their contact with Cornell resulted in injury to the plaintiffs. Damages in the amount of $750,000 are sought from the defendant hospital.

The parties have framed this case primarily within the context of negligence and proximate cause. Plaintiffs do not deny the negligence of others as a proximate cause of the injuries suffered, but claim negligence on the part of defendant, thus making the defendant a concurrent tortfeasor. The seminal issue here is that of negligence and plaintiffs bear the burden of proving the injury, the want of due care by the defendant, such lack of due care as the proximate cause of the injury and the damages suffered. 67 Ohio Jurisprudence 3d (1986) 124, Malpractice, Section 102.

Testimony of Dr. Smead is indicative of the standard of care imposed upon an Ohio State University Hospitals resident. Dr. Smead stated that information and observations gleaned during a preoperative admission, such as performed by Dr. Teitelbaum on September 18, 1983, must be noted on the hospital chart to meet the standard of care. Plaintiffs elicited further information from Dr. Smead regarding his personal expectations of the resident if Dr. Smead had been the surgeon on September 19, 1983. Smead's expectations do not expand the scope of the resident's standard of care in performing a preoperative admission summary. Plaintiffs dispute defendant's expert regarding the applicable standard of care, yet fail to provide substantial evidence to support the argu-

ment. Plaintiffs' own expert, Dr. Lang, noted the lack of a uniform standard of care for hospital residents and stated that variations of a standard of care as to resident doctors may occur within one hospital. Due care will depend upon the circumstances of each particular case. 67 Ohio Jurisprudence 3d (1986) 30, Malpractice, Section 20. The physician is not required to possess the highest degree of knowledge or skill nor is the physician an insurer or guarantor. The doctor must exercise the average degree of skill, care, and diligence as exercised by his or her peers in a similar situation. *Id.* at 32.

A resident physician of a hospital is generally held to be an employee of the hospital and subjects the hospital to liability for any negligent acts by the doctrine of respondeat superior. 1 Pegalis & Wachsman, American Law of Medical Malpractice (1980) 266-270, Section 3:34. This is standard agency law and will apply if any negligence is found regarding Dr. Teitelbaum's involvement here. Reviewing the facts within the context as they arose, there can be no finding of negligent action or omission by Dr. Teitelbaum. Testimony from Cornell indicated that the surgeon, Dr. Vasko, was informed on September 2, 1983 of Dr. Rojewski's diagnosis of a paralyzed right vocal cord. Cornell repeated this diagnosis to Dr. Teitelbaum during admission to the defendant hospital on September 18, 1983. Cornell also told Dr. Teitelbaum that Dr. Vasko was aware of Dr. Rojewski's diagnosis. Dr. Teitelbaum was under no duty to verbally notify Dr. Vasko of Cornell's claim nor was he bound to arrange for a specialist to examine Cornell. Dr. Teitelbaum reasonably believed that Cornell had told Dr. Vasko of Dr. Rojewski's diagnosis and furthermore reasonably believed that Dr. Vasko had undertaken any necessary precautions prior to scheduling Cornell's sec-

ond endarterectomy. Due care by Dr. Teitelbaum was limited to recording Cornell's comments on the hospital chart as he was trained to do.

Plaintiffs encourage this court to impose a duty upon Dr. Teitelbaum to seek out Dr. Vasko and in effect question his professional judgment in going forward with the second endarterectomy. I find such an act does not rise to the level of a duty required to comply with the standard of care for resident physicians in similar circumstances. Dr. Teitelbaum was entitled to believe that Dr. Vasko would read the hospital chart and adjust his proposed course of action, if necessary. Plaintiffs would have this court believe that Dr. Rojewski's diagnosis, merely passing through Dr. Teitelbaum's mouth, would gain credibility with Dr. Vasko and the second endarterectomy would not have occurred on September 19, 1983. Such a proposal is untenable and would subject resident physicians performing admission evaluations to liability beyond their correlative responsibility. As a practical matter, written communications, if properly gathered and compiled, are generally more reliable than unwritten dispersals of information. Plaintiffs' assertion of a dual duty finds no support in the evidence.

Plaintiffs also attempt to persuade this court that Dr. Teitelbaum violated the standard of care when he failed to either examine Cornell or arrange for a specialist to so examine him in order to substantiate the reported findings of Dr. Rojewski. Dr. Teitelbaum testified that he did not feel competent to examine Cornell for right vocal cord paralyzation and this belief is supported by expert testimony. There was testimony that it is common knowledge within the medical profession that postoperative nerve paralysis may be temporarily evident. Dr. Teitelbaum was aware of Cornell's prior endarterectomy of August 9, 1983. Dr.

Teitelbaum breached no standard of care by failing to arrange for examination of Cornell's right vocal cord. Dr. Teitelbaum reasonably believed that the surgeon for the following day, Dr. Vasko, would read the hospital chart and utilize his professional experience in weighing the benefits and risks to Cornell. Dr. Vasko was recognized as a specialist and Dr. Teitelbaum knew the following day Cornell would be under Dr. Vasko's direct care.

Plaintiffs have failed to prove any standard of care beyond that outlined by Dr. Smead. Dr. Teitelbaum, as an agent of defendant hospital, complied with the applicable standard of care which required written notice of information gathered from Cornell during the preoperative admission process. Dr. Teitelbaum was not negligent in his failure to verbally notify Dr. Vasko of Cornell's admission revelations. Similarly, Dr. Teitelbaum was not negligent in failing to arrange an examination by a specialist to confirm Cornell's information. Lacking a finding of negligence, further discussion of the merits is unwarranted. I find defendant's agent, Dr. Teitelbaum, breached no applicable standard of care, and thus find for defendant Ohio State University Hospitals.

*Judgment for defendant.*

LEONARD J. STERN, J., retired, of the Supreme Court of Ohio, sitting by assignment.