COX, Exr., Appellant,

v.

**OHIO STATE UNIVERSITY HOSPITALS, Appellee.**

[Cite as *Cox v. Ohio State Univ. Hosp.* (1996), 117 Ohio App.3d 254.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API03–316.

Decided Sept. 3, 1996.

*Michael F. Colley Co., L.P.A., Jennifer K. Thivener, Daniel N. Abraham* and *David K. Frank,* for appellant.

*Betty D. Montgomery,* Attorney General; *Emens, Kegler, Brown, Hill & Ritter, William J. Brown* and *Karl W. Schedler,* Special Counsel, for appellee.

CLOSE, Judge.

Plaintiff-appellant, Terry L. Cox, executor of the estate of Woodrow Cox, deceased, appeals a judgment of the Ohio Court of Claims for defendant-appellee, Ohio State University Hospitals ("OSUH"), which concluded that the hospital employees were not negligent and that two treating physicians were not employees of the hospital in a wrongful death and malpractice action brought by appellant on behalf of the estate of Woodrow Cox.

On December 30, 1985, Dr. Donald Warren admitted Woodrow Cox to the Coshocton County Memorial Hospital ("CCMH") after Cox complained of signifi-

cant abdominal pain. The CCMH doctors performed an X-ray on Cox when he arrived and suspected that he had an abdominal aortic aneurysm. Because there were no vascular surgeons at CCMH, Dr. Warren transferred Cox to OSUH for treatment. Drs. William Smead, Joseph Plouffe, and James Gadek were among several doctors that provided medical treatment for Cox during his stay at OSUH. The OSUH nursing staff, residents, and interns also provided medical care for Cox during this time. On January 10, 1986, Cox died of cardiac arrest caused by his reaction to an infection while he received treatment at OSUH.

On June 17, 1987, appellant, as executor of Woodrow Cox's estate, filed suit in the Ohio Court of Claims against OSUH, seeking damages for vicarious liability from medical malpractice and wrongful death of its employees. On June 21, 1987, appellant also filed a medical malpractice suit in the Franklin County Common Pleas Court against several doctors who practiced at OSUH during the time the decedent received treatment.

In October 1987, the Ohio General Assembly amended R.C. 2743.02, which addresses the Ohio Court of Claims' jurisdiction. It added subsection (F), which expanded that court's exclusive, original jurisdiction to include determining state employee immunity under R.C. 9.86.

On January 8, 1988, appellant filed his amended malpractice complaint in the common pleas court by adding Drs. Plouffe and Gadek as defendants. On February 16, 1988, these doctors filed a summary judgment motion. They sought immunity from the malpractice suit under the pre-October 1987 version of R.C. 9.86. The doctors supported their motion with affidavits indicating that they were OSUH employees and were acting within the scope of their employment during the decedent's treatment. Appellant did not contest their affidavits. On March 18, 1988, the common pleas court granted summary judgment in the doctors' favor, finding that they were OSUH employees when treating the decedent and were, therefore, immune from malpractice liability.

On August 20, 1991, appellant voluntarily dismissed his Court of Claims' action against OSUH without prejudice and refiled it on August 7, 1992. On March 17, 1993, OSUH moved that court to add Drs. Plouffe and Gadek as defendants for purposes of holding an R.C. 2743.02(F) immunity hearing. The Court of Claims granted OSUH's motion and held the hearing on August 23, 1993. In its decision entered on March 2, 1994, the court determined that these doctors were not employees of OSUH while treating the decedent and were, therefore, not entitled to state immunity under R.C. 9.86.

While this decision was contrary to the earlier common pleas court decision, the Court of Claims found that Drs. Plouffe and Gadek had misstated their employment relationship with OSUH in their previous affidavits and were, in fact, acting as members of private medical corporations during their treatment of the

decedent. The court further concluded that OSUH would not be held vicariously liable for any acts of Drs. Plouffe and Gadek as related to appellant's action. The Court of Claims also found that it was not bound by the common pleas court's decision through *res judicata* because neither OSUH nor the physicians had succeeded to an interest raised in that court. The Court of Claims reasoned that OSUH was not a party to suit in the common pleas court, but was a party to the suit before it, and that liability against a state entity can only be determined as permitted by statute.

On April 4, 1994, Drs. Plouffe and Gadek appealed the Court of Claims' judgment that they were not OSUH employees while treating the decedent. On June 21, 1994, this court dismissed their appeal, finding that it was not a final, appealable order. On July 10, 1995, the Court of Claims heard the case on the merits and entered its decision on February 12, 1996. It found that appellant did not establish an "agency by estoppel" relationship between OSUH and Drs. Plouffe and Gadek as a basis for vicarious liability. The court also found that appellant had not proved that the OSUH nurses, residents and interns were negligent in treating the decedent. It then entered judgment in favor of OSUH.

On March 12, 1996, appellant brought this appeal, setting forth two assignments of error:

"Assignment of Error Number 1:

"The trial court erred, to the prejudice of the appellant, in holding that Ohio State University Hospitals could not be liable under an agency by estoppel theory for the actions of its physicians.

"Assignment of Error Number 2:

"The trial court erred, to the prejudice of the appellant, in holding that the plaintiff-appellant failed to prove by a preponderance of the evidence that the employees of Ohio State University Hospitals were negligent in their care of the plaintiff's decedent."

In his first assignment of error, appellant contends that the Court of Claims' holding was contrary to law as determined in *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46. In that case, the Ohio Supreme Court held that "[a] hospital may be liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice and knowledge to the contrary, the patient looks to the hospital as opposed to the individual practitioner to provide competent medical care." *Id.* at syllabus.

Although OSUH contends that it did not hold itself out as a provider of medical services, the fact that it is a provider is so obvious that it will not be addressed further.

Looking then to the second requirement of *Clark*, we must determine whether the trial court acted within its discretion in factually finding that the individual decedent looked to OSUH rather than the individual practitioner to provide the competent medical care. Although the decedent's children testified as to their reliance on OSUH as opposed to the individual doctors, the trial court specifically found that, in a *Clark* analysis, the *patient's* reliance is the critical element, and that "appellant has failed to prove in this case, by the preponderance of the evidence, that decedent relied on any representation by OSUH that Drs. Plouffe and Gadek were its employees."

While it is perhaps a misstatement by the trial court to indicate that a representation by OSUH is necessary to establish that the doctors were employees of the hospital, the key is whether or not the patient looked to the hospital, as opposed to the individual practitioner, to provide competent medical care. A closer reading of the trial court's decision in the instant case makes it clear to this court that, although the trial court's language was perhaps not precise, it did know and apply the correct standard outlined in *Clark*.

In short, appellant's evidence on the issue of reliance was essentially the decedent's family's answers to leading questions about OSUH. The evidence that the trial court apparently relied on was that the decedent was under the care of Dr. Warren, his family physician at CCMH. Dr. Warren then referred decedent to Dr. Smead, who incidentally practiced at OSUH. The decedent did not seek out OSUH. The decedent did seek out his specific family doctor who referred him to another doctor who practiced at OSUH. This supports the trial court's conclusion that the decedent did not look to OSUH and rely on it to provide physician care.

It seems that, had the Ohio Supreme Court intended that a hospital should be liable for every doctor on its staff, it would have so indicated in its *Clark* decision. By the court's refusal to do so, we can only infer that it intended for trial courts to make the same kind of analysis as the Court of Claims performed here. This being the type of factual finding which should not be disturbed upon appeal, we will not disturb the trial court's finding in this case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Appellant's first assignment of error is overruled.

In his second assignment of error, appellant takes issue with the trial court's finding that there was no negligence on the part of OSUH's employees.

■ Under the doctrine of *respondeat superior,* a hospital is liable for the negligent acts of its employees. *Avellone v. St. John's Hosp.* (1956), 165 Ohio St. 467, 60 O.O. 121, 135 N.E.2d 410; *Klema v. St. Elizabeth's Hosp. of Youngstown* (1960), 170 Ohio St. 519, 11 O.O.2d 326, 166 N.E.2d 765. The plaintiff bears a burden of proving, by affirmative evidence, that the hospital's negligence was "in probability" the cause of the alleged injury. *Cooper v. Sisters of Charity* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97. The term "probable" has been defined as being more than fifty percent of actual. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 28 OBR 429, 430–431, 504 N.E.2d 44, 46–47.

■ In Ohio, medical malpractice is a tort arising from the contractual relationship between physician and patient. Absent some express promise, the physician is not an insurer of patient recovery or guarantor of results. *Bowers v. Santee* (1919), 99 Ohio St. 361, 124 N.E. 238. The law imposes on physicians engaged in the practice of medicine a duty to employ that degree of skill, care and diligence that a physician or surgeon of the same medical specialty would employ in like circumstances. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673. A negligent failure to discharge that duty constitutes "medical malpractice" if it proximately results in an injury to the patient. Whether negligence exists is determined by the relevant standard of conduct for the physician and is proved through expert testimony. *Id.* at 134–135, 75 O.O.2d at 188–189, 346 N.E.2d at 679–680; *Cooper.* This court has held that the same analysis applies to doctors in training, such as residents, interns, or fellows. *Frazier v. Ohio State Univ. Hosp.* (Dec. 19, 1995), Franklin App. No. 95API06–774, unreported, 1995 WL 771444; *Katko v. Ohio State Univ. Hosp.* (Aug. 6, 1991), Franklin App. No. 90AP–1117, unreported, 1991 WL 150945.

■ In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 580–581, 613 N.E.2d 1014, 1021–1022; *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph one of the syllabus.

■ In the instant case, appellant asks us to reweigh the trial court's evidence. Drs. Matthay and Condon, OSUH's expert witnesses, both opined that OSUH's caregivers—the nurses, residents, and interns—acted in a manner sufficient to meet the standards of care required in the circumstances. OSUH addressed every single medical treatment criticism that appellant raised as an issue through evidence it submitted to the trial court. We need neither address the criticisms

nor reweigh the evidence. Despite appellant's arguments, the evidence did not support the premise that negligence did occur and, even if one presumed that appellant had successfully established OSUH's negligence, the decedent probably would have survived. *Bruni; Berdyck. C.E. Morris* also dictates that the second assignment of error should be overruled, and it is.

For all the reasons noted above, appellant's claim of OSUH's vicarious liability through agency by estoppel and medical malpractice must fail. As there is no basis for finding error with the trial court's decision, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, J., concurs.

TYACK, J., concurs in part and dissents in part.

TYACK, Judge, dissenting in part and concurring in part.

While I agree with the majority opinion as to its resolution of the second assignment of error, I disagree with its resolution of the issues presented by *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46. I therefore dissent.

The syllabus for *Clark* reads:

"A hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care. (*Albain v. Flower Hosp.* [1990], 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph four of the syllabus, overruled.)"

Clearly, the Ohio State University Hospitals holds itself out as a provider of medical services. Therefore, the first requirement was met.

I also believe that the second requirement was met in the present case. Woodrow Cox was referred to physicians on staff at Ohio State University Hospitals for care which he could not receive at Coshocton County Memorial Hospital. Nothing in the process would advise a patient that he or she will receive all treatment from physicians who are not functioning as hospital employees but who are, instead, working for a private corporation or for a series of private corporations. Nothing in the referral process puts a patient and his or her family on notice that the Ohio State University Hospitals will attempt to

avoid financial responsibility for any errors which might be made by the physicians who practice there.

In the present case, where a patient died while under the physicians' care, the patient cannot testify as to his or her thought processes in pursuing medical care. To burden the heirs with a responsibility to prove those thought processes in order to recover in court seems positively unfair.

The majority opinion refers repeatedly to the word "reliance." That word is not present in the *Clark* syllabus. Indeed, the concept of detrimental reliance, prevalent in most agency by estoppel cases, has little applicability in the hospital/hospital staff context. In fact, the distinction of independent contractor versus employee has little applicability because hospitals have extensive control over the physicians who are on staff, whether the hospital issues a paycheck to the physician or not.

I believe the reality is, or at least should be, that hospitals assume responsibility, financial and otherwise, for the medical care provided by physicians who practice at their institution. Patients and the families of patients look both to the physician and to the hospital where the physician practices for responsibility for quality care. Only where a hospital clearly informs a patient and the patient's family that the hospital does not accept responsibility for the quality of care provided at that institution should the hospital be free of agency by estoppel. Neither the Ohio State University Hospitals nor any other hospitals of which I am aware so inform patients and families.

I believe that my view of the responsibility of hospitals is inherent in *Clark*, if not clearly stated in its syllabus. I, therefore, believe that the Ohio State University Hospitals is responsible for any errors of physicians on staff. Since the Ohio Court of Claims did not address the questions of the negligence of physicians on staff, the case should be remanded so the questions can be addressed.

Again, I respectfully dissent from the majority opinion's resolution of the first assignment of error.