Rebecca M. CAMERON,
et. al., Plaintiffs,

v.

CHILDREN'S HOSPITAL MEDICAL
CENTER, et al., Defendants.

No. C–1–94–343.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 4, 2002.

John Henry Metz, Cincinnati, OH, for Plaintiff.

Frank Chester Woodside, III, James Albert Comodeca, Iber, Robert A. Carpenter, Melissa A. Fetters, Dinsmore & Shohl–1, Richard McKibbin Hopple, Beckman Weil Shepardson & Faller–1, David Winchester Peck, Gorddon Christopher Greene, Rendigs Fry Kiely & Dennis–1, Cincinnati, OH, Susan Elizabeth Ashbrook, Columbus City Attorney's Office–2, Columbus, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Dr. Jobalia's Motion for a Final Order that Defendant is Entitled to Immunity (doc. 98), Plaintiffs' Response (doc. 103), Defendant Jobalia's Supplemental Memorandum (doc. 130), Defendant Dr. Jobalia's Motion for Summary Judgment

(doc. 153), Plaintiffs' Response to Dr. Jobalia's Motion for Summary Judgment and For Final Appealable Order (doc. 167), Defendant Dr. Jobalia's Reply (doc. 169), Defendant Children's Hospital Medical Center Motion for Summary Judgment (doc. 154), Plaintiffs' Memorandum in Opposition to Defendant Children's Hospital Medical Center's Motion for Summary Judgment (doc. 160), Defendant Children's Hospital Medical Center's Reply (doc. 163), and Plaintiffs' Supplemental Citations Re: Issues Raised in Oral Argument (doc. 172).

## BACKGROUND

The following facts have been derived from the various pleadings, motions, and responses in this case. This is a medical malpractice case concerning the death of a two-and-a-half-month-old boy, Connor Cameron, after heart surgery at Children's Hospital. Plaintiffs allege that while undergoing surgery, the infant's arterial blood pressure fell below the standard required level of 30 mm Hg for fifty-seven minutes of the procedure (doc. 160). Plaintiffs state that the level must be maintained above 30 mm Hg in order to ensure proper oxygenation of the patient's brain (*Id.*). The testimony of the experts on both sides shows that the infant suffered brain injury compatible with a "significant hypoxic event" ["hypoxic" meaning inadequate oxygen] (*Id.*). The infant never woke up after the surgery, and Plaintiffs' forensic pathologist attributed the child's death to global hypoxia (*Id.*). Plaintiffs named the doctors, Children's Hospital, and two John Does as Defendants in the action (doc. 1).

Defendant Dr. Jobalia asserts immunity to prosecution under the theory that his presence at Connor Cameron's surgery was as an anesthesiologist resident and as such he was an employee of the University of Cincinnati, a state institution (doc. 98). The threshold issue of Dr. Jobalia's employment status was already taken to the Court of Appeals on interlocutory appeal (doc. 57) and then remanded to this Court for a determination of Dr. Jobalia's status supported with references to record evidence (doc. 66).

Dr. Jobalia subsequently filed a motion for summary judgment in case he is not classified as a government employee (doc. 153). Dr. Jobalia's motion is grounded on the theory that he had very little involvement with the surgery, and what little involvement that he had met the standard of care.

Defendant Children's Hospital Medical Center (hereinafter "CHMC") also filed a motion for summary judgment essentially asserting that it was merely the situs of the operation and should not be held liable for Connor Cameron's death. CHMC also challenges Plaintiffs' allegations that CHMC failed to fully apprise the parents of the deceased child of the material risks involved in the procedure, requests summary judgment on the question of punitive damages, and attacks Plaintiffs' invocation of the doctrine of *res ipsa loquitur.*

## ANALYSIS

### I. Motions Pertaining to Dr. Jobalia.

#### A. Immunity

The Court initially found that Dr. Jobalia was not a state employee (doc. 56). That determination was subject to an interlocutory appeal and the Sixth Circuit remanded the question for further consideration (doc. 66). The Court ordered the parties to submit supplemental memoranda on the issue (doc. 120) and stated that it would decide Dr. Jobalia's status after completion of discovery (doc. 119). Defendant Jobalia's supplemental memorandum (doc. 130) cited to affidavits of the Dean of the College of Medicine of the University

of Cincinnati (doc. 23) and of the Director of Payroll and Employee Information with the Office of Personnel at the University of Cincinnati (doc. 24). Those affidavits indicate that Dr. Jobalia's presence at the surgery of Connor Cameron was in the scope of his employment as a resident at the University of Cincinnati, a state institution.

Plaintiff has not challenged the proposition of Defendant's affidavits that Dr. Jobalia was a resident of the University of Cincinnati, but has cited to non-binding authority for the proposition that Jobalia could be classified as a dual agent of both CHMC and the state, as a resident at a state university (doc. 172). Plaintiff also cites *Cornell v. Ohio State University Hospitals,* 36 Ohio Misc.2d 25, 521 N.E.2d 857 (1987) for the proposition that a "resident physician is generally held to be an employee of the hospital and subjects the hospital to liability for any of his negligent acts under the doctrine of *respondeat superior." Cornell,* however, is a case adjudicated before the Ohio Court of Claims and its discussion about resident physicians pertained to a resident whose alleged malpractice occurred on the grounds of a state university hospital where the resident was clearly an employee. As such, *Cornell* was in a different procedural posture and its general proposition was applicable to a factual situation where the resident was a direct agent of the same hospital where the alleged malpractice took place.

 Upon reconsideration, the Court finds that the affidavits of Defendant Jobalia cited in Defendant's supplemental memorandum establish that during Connor Cameron's surgery Dr. Jobalia acted in the scope of his employment as a resident at the University of Cincinnati (doc. 130). As such, Dr. Jobalia was a state employee. Therefore, this Court lacks jurisdiction over a claim against Dr. Jobalia absent a ruling by the Court of Claims that he lacks state immunity. *Conley v. Shearer,* 64 Ohio St.3d 284, 595 N.E.2d 862 (1992). Contrary to the title of Dr. Jobalia's "Motion for a Final Order that Defendant is Entitled to Immunity" (doc. 98), this Court cannot make an immunity determination, but can only determine the threshold question whether Dr. Jobalia is a state employee. The Court of Claims has exclusive jurisdiction over the determination of immunity of state employees. *Conley,* 64 Ohio St.3d at 287, 595 N.E.2d 862. If the Court of Claims would find Dr. Jobalia immune, then Plaintiffs' case against Dr. Jobalia would be a case against the state of Ohio and would be adjudicated in the Court of Claims. In the case that the Court of Claims would find that Dr. Jobalia lacks immunity, he could be held liable individually in the current case pending before this Court.

## B. Summary Judgment

Dr. Jobalia's Motion for Summary Judgment is now moot in light of the Court's finding that he was a state employee. The Court lacks jurisdiction to entertain such motion.

## II. Defendant Childrens' Hospital Medical Center

### A. Standard of Review

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. *Guarino,* 980 F.2d at 410; *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir. 1991).

### B. Motion for Summary Judgment based on Lack of Independent Cause of Action

CHMC filed a motion for summary judgment based first on the theory that Plaintiffs have not provided evidence to support an independent negligence action against it (doc. 154). CHMC asserts that Plaintiffs have failed to establish through expert testimony the standard of care applicable to the CHMC nor that CHMC deviated from that standard of care (*Id.*). CHMC's theory is that Plaintiff's expert testimony on the standard of care all pertains to the surgeon, anesthesiologist, and the perfusionist but that there is no testimony concerning the standard of care required of the hospital (*Id.*).

In response, Plaintiffs cite *Clark v. Southview Hospital,* 68 Ohio St.3d 435, 628 N.E.2d 46 (1994) to refute CHMC's theory that Plaintiffs must show CHMC's negligence distinct from that of the surgeon and anesthesiologist (doc. 160). *Clark* held that the doctrine of agency by estoppel applies to hospitals when (1) the hospital holds itself out to the public as a provider of medical services, and (2) absent notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care. 628 N.E.2d at 53. Under *Clark,* unless Plaintiffs view CHMC merely as the situs where their physician

would provide treatment, they have a right to assume that the treatment was being rendered through CHMC employees and that any negligence associated with the treatment would render the hospital liable (*Id.*). Plaintiffs have provided affidavits that state that they viewed CHMC as the provider of care and recited facts showing that they did not choose a particular surgeon or anesthesiologist, but that such personnel were assigned by CHMC (doc. 160). Plaintiffs argue, therefore, that because they looked to CHMC to provide competent medical care, and not any one individual practitioner, that CHMC is liable for the infant's death (*Id.*).

In oral argument and in their Reply Memorandum (doc. 163), Defendants argue that the second part of *Clark* should be interpreted in light of *Cox v. Ohio State University Hospitals*, 117 Ohio App.3d 254, 690 N.E.2d 552 (1996). Defendants argue that under *Cox*, a hospital is not held liable for negligence of the independent treating physician when plaintiff had first sought treatment from his family physician, who then referred the plaintiff to another physician for treatment, who incidentally practiced at the defendant hospital. Defendants argue that the Court should not consider the self-serving affidavits of Plaintiffs, but rather look at the mechanics of how Connor Cameron was referred to CHMC to show that Plaintiffs looked to their individual practitioner, as opposed to CHMC, to provide medical care (doc. 163).

The Court disagrees with Defendant's application of *Cox* to the facts of this case. In *Cox* the decedent patient had been admitted to a local hospital by a doctor he specifically sought out who quickly transferred the patient based on the admitting doctor's decision that the patient needed surgery. 117 Ohio App.3d 254, 690 N.E.2d 552, 553. The patient died about

ten days later in the transferee hospital. *Id.* In this case, the Camerons took their son to CHMC after their pediatrician Dr. Buerk referred them there. It was at CHMC that Connor was diagnosed with a ventricular septal defect, and it was at CHMC where Connor was monitored and followed up upon until his surgery some four months later (doc. 160). During this four-month period the Camerons did not look primarily to Dr. Buerk as the care provider. In contrast, they consulted with a number of physicians who practiced at CHMC. Dr. Buerk did not make the decision that Connor Cameron needed surgery. These facts show, even absent alleged self-serving affidavits, that the Camerons were looking to CHMC for medical help rather than to their pediatrician Dr. Buerk, or any other individual practitioner.

Furthermore, *Cox* involved a decedent who was not able to testify as to his thought processes in pursuing medical care. 690 N.E.2d at 556. The heirs were then left with the burden of proving how that patient decedent looked to the hospital, as opposed to an individual practitioner, for medical care (*Id.*). In contrast, in the case of Connor Cameron, his parents have been able to testify quite clearly concerning how they viewed CHMC as the provider of care as they pursued medical help for their infant son (doc. 160).

■ Finally, and most critically in the Court's consideration of a motion for summary judgment, *Cox* correctly assessed as a factual finding the question of who plaintiff viewed to be the caregiver. 690 N.E.2d at 555. As this precise genuine issue of material fact is in dispute in this case, summary judgment is inappropriate. With all inferences in the light most favorable to the non-moving party, the Court finds that CHMC is not entitled to judgment as a matter of law on the question of

its liability for the death of Connor Cameron.

## C. Informed Consent

Defendant CHMC also moved for summary judgment on Plaintiffs' additional claim that CHMC failed to fully apprise the parents of the deceased child of the material risks involved in the procedure (doc. 154). CHMC argues that Plaintiffs' experts provided no testimony concerning what a reasonable medical practitioner would disclose to a patient about the risks of a procedure (*Id.*). CHMC argues that Plaintiffs' lack of evidence as to this allegation entitles CHMC to summary judgment on the issue of informed consent.

■ At oral argument on this question, Defendant CHMC produced a form entitled "Acknowledgment of Informed Consent for Surgical Procedure." Gary Cameron, Connor's father, signed the form. It states that Gary Cameron had been apprised of the reasonably known risks and complications of the surgery, and that he consented to the surgery.

Plaintiffs responded that no patient consents to negligence (doc. 160). Plaintiffs offered no affidavits providing facts as to what information they were given prior to the surgery concerning the risk of the procedure. A party may not rest upon the mere allegations of its pleading, but must in its response to a motion for summary judgment set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Plaintiffs have failed to so respond on its allegations of lack of informed consent. Therefore summary judgment for the Defendant is appropriate on the allegation of lack of informed consent.

## D. Res Ipsa Loquitur

■ CHMC's also attacks Plaintiffs' invocation of the doctrine of *res ipsa loqui-*

*tur* (doc. 154). The rule of *res ipsa loquitur* is not a rule of substantive law but is a rule of evidence. It permits the jury, but not the court in a jury trial, to draw an inference of negligence where the instrumentality causing the injury was, at the time of the injury, under the exclusive control of the defendant, and that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. *Becker v. Lake County Memorial Hospital West,* 53 Ohio St.3d 202, 560 N.E.2d 165 (1990). CHMC apparently seeks summary judgment based on the theory that Plaintiffs negligence complaint is grounded in *res ipsa,* that *res ipsa* fails, and so, therefore, does the complaint.

Defendant argues that Plaintiffs have failed to establish *res ipsa loquitur* for three reasons, (1) Plaintiffs did not name the perfusionist present in the surgery as a Defendant, and therefore did not establish that Defendants had exclusive control over the instrumentalities and procedures used in the surgery; (2) Plaintiffs' experts admitted to other possible causes of the infant's death; and (3) Ohio courts have refused to apply the doctrine of *res ipsa loquitur* in cases where expert testimony fails to establish a deviation from the standard of care. For this third point, CHMC argues, as above, that Plaintiff must establish an independent cause of action against it, as opposed to a cause of action against the physicians (*Id.*).

■ Plaintiffs address CHMC's first argument that the doctrine of *res ipsa loquitur* is inapplicable by citing *Becker* for the proposition that *res ipsa* is applicable in situations involving multiple defendants (doc. 160). Plaintiffs state that the perfusionist in this case was CHMC's agent, and because CHMC is a named Defendant in

the case, *res ipsa* applies (*Id.*). Plaintiffs cite *Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687 (1945) under which a plaintiff injured while under anesthetic was entitled to the aid of the doctrine of *res ipsa loquitur* without needing to show which doctor or nurse was responsible for his injury (*Id.*).

Plaintiffs challenge CHMC's argument that Plaintiffs' experts conceded that there were other possible causes for the infant's death (*Id.*). Plaintiffs characterize those concessions as merely hypothetical and not reasonable assumptions in this case (*Id.*). Plaintiffs direct the Court to the testimony of Plaintiffs' forensic pathologist, Dr. Sperry (*Id.*). Sperry indicated that there was no evidence of any other disease process, abnormality, or condition that would begin to adequately explain the lack of oxygen that caused the brain death of the infant other than low arterial pressure (*Id.*). Finally, Plaintiffs argue that they have indeed established that there was a deviation from the standard of care so that Defendants' arguments that Ohio Courts have generally refused to apply *res ipsa* absent such evidence are meritless (*Id.*)

The Court finds that Defendants' arguments concerning *res ipsa loquitur* lack merit. Under *Clark,* CHMC can be held liable for the negligence of the perfusionist, and it is not necessary for every actor to be named as a Defendant. The Court finds that a reasonable jury could find CHMC negligent under the theory of *res ipsa loquitur* and therefore that CHMC's motion for summary judgment based on an attack of Plaintiffs' invocation of this theory fails.

**E. Punitive Damages**

■ CHMC included in its motion for summary judgment its argument on the question of punitive damages (doc. 154). CHMC argues that Plaintiffs request punitive damages without having established

the requisite evidence of actual malice (*Id.*). The question of punitive damages, however, is not a dispositive question, but is a determination to be made in a damages calculation if and when liability is determined. Therefore, CHMC's attention to this question is premature, and the Court will not address punitive damages at this time.

**CONCLUSION**

The Court finds that Dr. Jobalia is a state employee and therefore that it lacks jurisdiction to entertain a summary judgment motion as to Plaintiffs' claims against him. The Court further finds that there is a genuine issue of material fact as to whether Plaintiffs viewed CHMC as the provider of medical care for their son Connor. Summary judgment is therefore inappropriate on the question of CHMC's liability. However, Plaintiffs have failed to set forth specific facts showing an issue for trial on their claim of lack of informed consent. Therefore, Defendants are entitled to summary judgment on Plaintiffs' claim of lack of informed consent. Finally, CHMC's attack of Plaintiffs' invocation of *res ipsa loquitur* fails because Plaintiffs have established that Defendants were in control of the instrumentalities of the surgery, the CHMC can be held liable for the negligence of the doctors, and a reasonable jury could find Defendants negligent under the theory.

Accordingly, the Court hereby FINDS that Defendant Dr. Jobalia was a state employee and accordingly STAYS all proceedings as to Dr. Jobalia pending a determination of immunity in the Court of Claims. The Court DENIES Defendant CHMC's Motion for Summary Judgment as to its liability for Plaintiffs' malpractice claim. The Court further DENIES Defendant CHMC's Motion for Summary Judgment premised upon an attack of

Plaintiffs' invocation of the theory of *res ipsa loquitur*, and GRANTS Defendant CHMC's Motion for Summary Judgment on Plaintiffs' Claim for Lack of Informed Consent.

SO ORDERED.