DECISION.
On the evening of June 14, 1994, plaintiff-appellant, Margaret M. Wise ("Wise"), began having difficulty talking during a phone conversation with her son Thomas Wise. Thomas Wise notified other family members, who converged on Wise's home. Although Wise appeared well mentally and physically, she was unable to complete sentences and her speech was garbled. Additionally, the family members noticed a small amount of coffee-colored vomit on Wise's clothing and bathroom floor.
Terry Wise and Ann Schlinkert, Wise's daughters-in-law, were present. Being registered nurses, both of them decided that Wise needed medical attention, because they believed that Wise was experiencing a stroke. Terry Wise contacted by phone Wise's family physician, Dr. David Wiltse. Dr. Wiltse instructed the family to take Wise to the hospital immediately for evaluation.
Margaret Wise was then taken to Franciscan Hospital — Western Hills Campus, at the time known as St. Francis-St. George Hospital. She was seen in the emergency room by Dr. Vernon L. Hermecz, an employee of Qualified Emergency Medical Services, Inc., ("QESI"), which was under a contract to provide doctors for the hospital's emergency room. Dr. Hermecz ordered that a CT scan, a chest x-ray, and blood work be performed on Wise. Dr. Hermecz, in consultation by telephone with Dr. Wiltse,[1]
diagnosed Wise with a cerebral vascular accident,[2] prescribed Ecotrin[3] for treatment, and admitted Wise to the hospital for observation.
Around 6:30 in the morning, Dr. Wiltse came to see Wise. Dr. Wiltse believed that Wise had suffered a more serious stroke than what had been conveyed to him by Dr. Hermecz the previous evening. Dr. Wiltse immediately ordered the administration of Heparin[4] and sought a neurology consultation with a Dr. Reed. Dr. Reed subsequently ordered the cessation of the administration of the Ecotrin prescribed by Dr. Hermecz the previous night, because it would no longer be needed due to the administration of Heparin.
Despite the continued treatment and care of Wise, her condition did not improve. She remains to this day unable to communicate and has resided in a nursing home since July 1997.
Wise, through a power of attorney granted to her son Arthur Wise, initially filed suit against the defendants-appellees in 1995; however, that suit was dismissed in May 1996. The case was refiled in January 1997. In her complaint, Wise sought recovery for the deviation in the standard of medical care provided to her by Dr. Hermecz, QESI, and the hospital's nursing staff. Wise also claimed that Dr. Hermecz had failed to fully advise Wise's family members of the nature of Wise's true condition, the result of which was a less aggressive course of treatment for Wise than would have otherwise been undertaken.
Dr. Hermecz and QESI filed motions for summary judgment on February 24, 1997, and on April 22, 1998. In the first summary-judgment motion, they claimed that Dr. Hermecz did not fail to provide proper treatment for Wise. In the second summary-judgment motion, they claimed lack of service of process and that the claims against them were time-barred.
Franciscan — Western Hills Campus and the Franciscan Health System of Cincinnati, Inc., together filed a motion for summary judgment on April 14, 1998. In their motion, the Franciscan defendants claimed that they were not liable for any malpractice attributable to Dr. Hermecz and QESI, because they were not the employers of either QESI or Dr. Hermecz. Further, their motion asserted that there was no evidence presented that the hospital staff had any direct liability for Wise's injuries.
Subsequently, the Franciscan Health System of Cincinnati, Inc., filed a separate motion for summary judgment on April 16, 1998, asserting that any claims against it were time-barred because it had never received the 180-day-extension letter that allowed Wise six additional months within which to file her suit. Realizing that counsel for Franciscan Hospital — Western Hills Campus and Franciscan Health System of Cincinnati, Inc., were the same, the Franciscan Health System of Cincinnati, Inc., later withdrew this motion on the basis that counsel had received the 180-day-extension letter.
On April 23, 1998, Wise filed her motion for summary judgment, claiming that she was entitled to judgment as a matter of law on the claims of medical malpractice directly against Dr. Hermecz and derivatively against QESI and the Franciscan defendants, and also on the direct-liability claims against the Franciscan defendants for the negligence of the hospital nursing staff.
On July 23, 1998, the trial court heard oral arguments from the parties. On September 8, 1998, the trial court ruled in favor of all four defendants-appellees and overruled Wise's motion for summary judgment. Wise appealed, but the matter was remanded to the trial court for clarification of whether all of the deposition material had been reviewed by the trial court prior to its ruling. The trial court held a hearing and ruled that it had, in fact, reviewed all of the depositions. The record was supplemented with the trial court's findings and returned to this court.
Wise has raised two assignments of error for this court to review. In her first assignment of error, Wise claims that the trial court erred in denying her motion for summary judgment. In her second assignment of error, she claims that the trial court erred in granting summary judgment to the defendants-appellees. Although the trial court did not provide the reasons for its decision regarding the summary-judgment motions, it was not required to do so. See Civ.R. 52. Even though we do not know the exact basis for the trial court's decision, we believe that, based upon the record in this case, summary judgment was properly granted in favor of the defendants-appellees and against Wise.
A trial court may grant summary judgment only when the moving party demonstrates that the record is devoid of genuine issues of material fact and that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Civ.R. 56(B); see, e.g., Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798, 801; Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264, 274. Where there are no significantly disputed factual issues, summary judgment may properly be granted to avoid a formal trial; however, the trial court may only grant summary judgment after construing the evidence in favor of the nonmoving party. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1,2, 433 N.E.2d 615, 616; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267, 274. An appellate court reviews the record de novo to determine whether the party moving for summary judgment met its burden. Id.; Wille v. HunkarLaboratories, Inc. (Dec. 31, 1998), Hamilton App. No. C-971107, unreported, 1998 WL 906415.
At the heart of the summary-judgment motions filed by Dr. Hermecz and QESI was the issue of jurisdiction. Wise believed that the court had jurisdiction, and that any issues regarding jurisdiction over the claims against Dr. Hermecz and QESI had been waived by their participation in this case. We disagree.
The malpractice claims against Dr. Hermecz and QESI that give rise to this lawsuit accrued on June 15, 1994. Wise had one year from that date to file her lawsuit under the applicable statute of limitations. See R.C. 2305.11(B)(1); Frysinger v. Leech (1987), 32 Ohio St.3d 38,512 N.E.2d 337. That one-year time period could be extended by 180 days if the parties that were the subject of the malpractice claims were notified by letter regarding the potential lawsuit. See R.C.2305.11(B)(1); Edens v. Barberton Area Family PracticeCtr. (1989), 43 Ohio St.3d 176, 539 N.E.2d 1124. If a potential defendant does not receive the 180-day-extension letter, then the one-year statute of limitations applies to the filing of a claim against that defendant. See id.
If a plaintiff files an action within the limitations period, or within the 180-day-extension period, but the action "fails otherwise than upon the merits," the plaintiff may commence a new action by refiling the complaint within one year from the date the first action was dismissed. See R.C. 2305.19; Frysinger,supra. This savings provision applies only when the subsequent suit involves the same parties and claims as the first. See Children'sHospital v. Dept. of Pub. Welfare (1982), 69 Ohio St.2d 23,433 N.E.2d 187. The savings statute will not preserve claims against a potential party who was not served with the original complaint within the limitations period, or within the 180-day extension period. See Lewis v. Lawyer Chiropractic Clinic (Aug. 26, 1999), Scioto App. No. 98CA2590, unreported.
Although Dr. Hermecz received his 180-day-extension letter prior to the running of the statute of limitations, QESI did not receive one. Therefore, Wise had until June 15, 1995, to file her suit against QESI, and until December 15, 1995, to file suit against Dr. Hermecz. On December 8, 1995, Wise filed her action against QESI only. Subsequently, Dr. Hermecz agreed to extend until March 12, 1996, the time for Wise to file her suit naming him as a defendant. On March 12, 1996, Wise amended her complaint against QESI to include claims against Dr. Hermecz, Franciscan Hospital — Western Hills Campus, and Franciscan Health System of Cincinnati, Inc.[5] Although Wise timely filed her complaint, the complaint was never properly served on Dr. Hermecz, who, as Wise well knew from her 180-day-extension letter, resided out of state.
Realizing that she did not have proper service of her complaint, Wise voluntarily dismissed her suit on May 11, 1996. Wise refiled the lawsuit in January 1997 against all four defendants. R.C. 2305.19, the savings statute, allowed Wise to refile the suit against all of the parties who had been properly served with the original complaint, because the voluntary dismissal pursuant to Civ.R. 41 was a dismissal other than on the merits. See Frysinger, supra. Service of process for this second complaint was made on all but Dr. Hermecz, who was never properly served.
Although QESI and Dr. Hermecz filed an answer to the second complaint, they preserved in that answer their defenses of lack of jurisdiction and lack of service of process. The record is clear that QESI did not receive the 180-day-extension letter, and that an action against QESI was not commenced within the one-year limitations period that expired on June 15, 1995. Therefore, the trial court was correct in granting summary judgment to QESI, because any claims against it arising out of the treatment of Wise were time-barred.
Although Dr. Hermecz received his 180-day-extension letter and gave Wise an additional extension to file her complaint, Dr. Hermecz was never properly served, as required under Civ.R. 3(A), with either the original complaint or the second complaint, within one year from the date the action was filed by Wise. Since the action was never properly commenced against Dr. Hermecz through proper service of process, the trial court did not have in personam jurisdiction over Dr. Hermecz.
Wise attempted to counter Dr. Hermecz's lack-of-service defense by asserting that the time for serving Dr. Hermecz, at the time an out-of-state resident, was tolled by his absence from the state. Wise was incorrect in that assertion, because R.C. 2305.15 does not toll the time for service on an out-of-state defendant if that defendant is amenable to service of process and has not absconded from the jurisdiction. See Bendix Autolite Corp. v. MidwescoEnterprises, Inc. (1988), 486 U.S. 888, 108 S.Ct. 2218; PermanentGen. Ins. Cos., Inc. v. Dressler (Dec. 4, 1998), Hamilton App. No. C-980088, unreported; Simpson v. Neidlinger (Nov. 13, 1996), Hamilton App. No. C-950649, unreported. Since Dr. Hermecz was amenable to service of process while residing out of state, we hold that he was never properly served with either the original complaint or the subsequent complaint within one year, and that, as a result, the limitations period for the commencement of an action against him under Civ.R. 3 had expired. See King v. Hazra
(1993), 91 Ohio App.3d 534, 632 N.E.2d 1336.
Wise also argued that Dr. Hermecz waived service of process when he answered the complaint and appeared at his deposition. Wise was again mistaken, because one does not, by participating in a case, waivein personam jurisdiction once the defense of lack of proper service of process has been raised. See First Bank of Marietta v. Cline (1984),12 Ohio St.3d 317, 466 N.E.2d 567; Maryhew v. Yova
(1984), 11 Ohio St.3d 154, 464 N.E.2d 538. Therefore, Dr. Hermecz's participation in the case, after he raised the defense of lack of service of process, did not act as a waiver of the service of process required for the commencement of a civil action.
Since Dr. Hermecz never received proper service in this case and did not waive that defense (1) by filing an answer that incorporated that defense or (2) by participating in deposition testimony, Dr. Hermecz was never made a party to the action such that the trial court hadin personam jurisdiction. Therefore, the trial court properly granted summary judgment to Dr. Hermecz.
We now turn our attention to the only defendants over which the trial court had jurisdiction — the Franciscan defendants. For the following reasons, we hold that the trial court properly granted summary judgment to the Franciscan defendants, and properly overruled Wise's summary-judgment motion against them.
The Supreme Court of Ohio has held that "[a] hospital may be liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice and knowledge to the contrary, the patient looks to the hospital as opposed to the individual practitioner to provide competent medical care."Clark v. Southview Hosp. Family Health Ctr. (1994), 68 Ohio St.3d 435,628 N.E.2d 46, syllabus. The key to determining whether the Franciscan defendants were vicariously liable to Wise depends, in part, upon whether Wise relied upon the hospital to provide her care, or whether she "merely viewed the hospital as the situs where her physician would treat her." See id.
Wise asserted in her motion for summary judgment that the hospital held itself out to the public as a provider of emergency medical services. The depositions of the Wise family members appear to support this argument, and that view is reasonable in light of the evidence presented. While notice of the independent-contractor relationship between QESI, Dr. Hermecz, and the Franciscan defendants would have defeated Wise's claims, QESI's and Dr. Hermecz's relationship with the Franciscan defendants was not made known to Wise in any meaningful manner. Merely posting signs in the emergency room and having a patient sign acknowledgement forms while awaiting treatment for a serious malady were not meaningful notice. See Clark, supra, at 445-446, 628 N.E.2d at 54. Thus, it appears on the facts of this case that the Franciscan defendants held themselves out to the public as a provider of emergency medical services.
But the Clark analysis does not end there. In Clark, the Supreme Court of Ohio held that the hospital would not be liable if the patient "merely viewed the hospital as the situs where her physician would treat her." Clark, supra, at 445,628 N.E.2d at 53. Therefore, in order to prevail on her claim, Wise had to demonstrate in her motion for summary judgment that there was no genuine issue of material fact that she looked to the Franciscan defendants for treatment, rather than to Dr. Wiltse. This analysis is fact dependent, and must be applied on a case-by-case basis.
In Cox v. Ohio State Univ. Hospitals (1996), 117 Ohio App.3d 254,690 N.E.2d 552, the court upheld a summary-judgment motion in favor of a hospital based upon the second prong of the Clark
analysis. After complaining of abdominal pain, Woodrow Cox was admitted to a local hospital by his doctor for treatment. Subsequently, Cox's doctor, realizing that he could not treat Cox's abdominal aortic aneurysm, transferred Cox to the Ohio State University Hospital, where he was treated by a physician whose services were contracted by that hospital. Cox subsequently died as a result of that treatment, and Cox's family sued Ohio State University Hospital. The court held that the hospital was not liable for any negligence of the treating physician, because Cox had first sought treatment from his physician, who had then referred Cox to another physician for treatment. See Cox, at 258,690 N.E.2d at 554. Thus, since Cox had looked first to his own doctor for treatment, Cox failed to establish that he had looked to the hospital first for treatment. Wise's case is very similar.
Although Wise's condition was discovered by family members around 7:00 p.m., Wise did not arrive at the hospital until 9:10 p.m., even though the hospital was located only ten minutes from Wise's home. Wise's family members conducted an assessment of Wise, then sought out Dr. Wiltse for advice on how to proceed. The deposition testimony of the family members, and the deposition testimony of Dr. Wiltse, reflect that it was Dr. Wiltse whom the family members first contacted regarding Wise's condition, because Dr. Wiltse had been Wise's physician for a least two years prior to the night of the stroke, and because Terry Wise, Wise's daughter-in-law, was an employee of the medical group to which Dr. Wiltse belonged.
According to the deposition testimony of several of the family members, Terry Wise made the telephone call to Dr. Wiltse. Additionally, there was testimony that Dr. Wiltse intended to meet the family at the hospital that night. Although the record reflects that a deposition of Terry Wise was taken on November 19, 1997, her full deposition testimony is conspicuously absent from the record. Only excerpts from her deposition testimony were filed by Wise on April 23, 1997, along with several other excerpts to support Wise's summary-judgment motion. Based upon the excerpts from Terry Wise's deposition and other deposition testimony, it is unclear as to what exactly Dr. Wiltse instructed the family to do regarding treatment for Wise, or what time during the evening this phone call took place. Although Dr. Wiltse did not end up meeting the family and Wise at the hospital that evening, he was consulted regarding Wise's treatment and was listed on hospital records as the both the admitting physician and the treating physician.
The facts presented in this case demonstrate only that it was not until after the family members contacted Dr. Wiltse that they took Wise to the hospital. Furthermore, it appears that Dr. Wiltse was involved in both the diagnosis and treatment of Wise, including Wise's admission to the hospital. Because Wise did not go to the hospital until after first seeking treatment from Dr. Wiltse, it is apparent that Wise did not look to the Franciscan defendants to provide treatment to her, but merely viewed the hospital as the location where she would be treated by Dr. Wiltse.
Based upon the evidence presented to support her summary-judgment motion, Wise failed to establish a genuine issue of material fact that she looked to the Franciscan defendants, rather than to Dr. Wiltse, for treatment of her condition. Consequently, we elect, under the facts of this case, to follow the reasoning of Cox and hold that Wise failed as a matter of law to satisfy the second prong of the Clark
test. The failure to satisfy both prongs of the Clark test precluded any negligence committed by Dr. Hermecz from being imputed to the Franciscan defendants on an agency-by-estoppel theory. Therefore, the trial court was correct in denying Wise's summary-judgment motion and in granting summary judgment to the Franciscan defendants on this claim.
Notwithstanding our conclusion regarding the foregoing analysis of the elements of Clark required to impute liability to the hospital for a doctor's negligence, we have already determined that Dr. Hermecz could not be found liable, because he was never made a party to this action. Additionally, our independent review of the record reveals that there is no evidence that the care provided to Wise by Dr. Hermecz deviated from the standard of care required for Wise's condition.
The final claim raised by Wise was the direct negligence of the nursing staff, which could have been imputed to the Franciscan defendants based upon the theory of respondeat superior. See Cox,supra, citing Avellone v. St. John's Hosp. (1956), 165 Ohio St. 467,135 N.E.2d 410. "In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury." Cox, supra, at 259, 690 N.E.2d at 555, citing Berdyck v. Shinde (1993), 66 Ohio St.3d 573,613 N.E.2d 1014; Ramage v. Cent. Ohio Emergency Serv.,Inc. (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph one of the syllabus. Wise alleged (1) that the nursing staff failed to notify Dr. Wiltse, or any other doctor, regarding Wise's condition throughout the early morning hours of June 15, 1994; (2) that the hospital nursing staff negligently failed to give Ecotrin to Wise while she was still in the emergency room; and (3) that the nursing staff deviated from the standard of care by, among other things, improperly charting Wise's condition and failing to question the doctor's orders. We disagree.
Although Wise presented the expert deposition testimony of Dr. Rivera and the deposition testimony of several nurses and L.P.N.'s, Wise failed to establish that any of the deviations from the accepted standards of nursing care proximately caused Wise's injuries. The only deviation in the standard of care that came close to proximately causing Wise's injuries was the failure to contact Dr. Wiltse during the period of time that Wise's condition supposedly deteriorated between 12:10 a.m. and 6:30 a.m., the time that Dr. Wiltse arrived at the hospital to check on Wise.
It was only the family members' opinions that Wise had deteriorated throughout the night and that the nursing staff should have contacted a doctor. Despite the fact that Dr. Wiltse informed the Wise family members that Wise was not in the condition that had been described to him by Dr. Hermecz the previous evening, Dr. Wiltse testified that Wise's change in condition had been subtle and may have gone unnoticed by the nursing staff. Wise's expert, Dr. Aseff, testified that the change in Wise's condition might not have been significant enough to require the nursing staff to contact Dr. Wiltse, or any other doctor. Nothing in the record demonstrates that the nursing staff's actions or omissions proximately resulted in the worsening of Wise's condition or in the compromise of her potential recovery.
Wise also claimed that the nursing staff should have followed Dr. Hermecz's order to administer Ecotrin immediately, while Wise was in the emergency room. The record demonstrates that Ecotrin was never administered to Wise either in the emergency room or after her admission to the hospital. Instead, Heparin was administered to Wise at 8:15 a.m., which was almost two hours after Dr. Wiltse first ordered Heparin for Wise.
The expert testimony presented by Wise and the defendants-appellees demonstrated that the failure to administer a blood-thinning agent within eleven hours of arrival at the hospital did not, in 1994, fall below the standard of care for the treatment of a stroke. In 1994, the standard of care called for the administration of a blood-thinning agent within 24 hours. Additionally, all but one expert testified that they could not predict Wise's outcome had either Ecotrin or Heparin been administered prior to the time it was actually given. Furthermore, although improper charting by the nursing staff may have fallen below the standard of care, Wise failed to prove that the charting errors proximately caused her injuries.
Having failed to prove any direct negligence on the part of the Franciscan defendants, the trial court properly denied Wise's summary-judgment motion. By demonstrating that Wise could not prove any direct negligence on the part of the hospital, the Franciscan defendants' summary-judgment motion was properly granted on the direct-negligence issues.
Wise also claimed that the Franciscan defendants negligently failed to inform her family members of the risks, benefits, and alternative treatments for her stroke. Summary judgment was correctly granted to the Franciscan defendants on this issue, because R.C. 2317.54 bars any "informed consent" cause of action against hospitals. See R.C. 2317.54.
Wise also raised a "loss of chance" claim against the Franciscan defendants. Since Wise failed to present expert testimony to demonstrate that any act or omission increased the risk of harm to her, she was not entitled to summary judgment on this claim. SeeRoberts v. Ohio Permanente Medical Group, Inc. (1996), 76 Ohio St.3d 483,668 N.E.2d 480; Shumaker v. Oliver B. Cannon Sons,Inc. (1986), 28 Ohio St.3d 367, 504 N.E.2d 44. In fact, Wise's expert testified that he was unsure whether there was any benefit an alternative treatment would have had on Wise's condition. Dr. Reed, Wise's neurologist, testified that everything that could have been done for Wise was done.
Although it was unfortunate that Wise suffered a stroke, we cannot hold a party liable for her condition based upon the medical negligence claims raised in this case. Furthermore, because all parties are entitled to due process, we cannot hold a party liable when a plaintiff fails to file a lawsuit within the allotted limitations period or fails to serve properly a potential defendant. Therefore, we overrule Wise's assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
 Gorman, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] Dr. Hermecz stated in his deposition that he never spoke to Dr. Wiltse, but did speak to Dr. Wiltse's associate, Dr. Hess. Dr. Wiltse insisted in his deposition testimony that he was the one Dr. Hermecz spoke with regarding Margaret Wise's condition and course of treatment. In any case, this issue is irrelevant to the analysis of whether Dr. Hermecz was negligent, since the course of treatment would not have changed regardless of whom Dr. Hermecz spoke with that evening.
[2] This is commonly referred to as a stroke.
[3] This is the pharmacological name for aspirin, a known blood-thinning agent.
[4] Heparin is a blood-thinning agent, the effects of which can be readily monitored.
[5] The Franciscan defendants do not challenge the timeliness of the filing against them.